**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| ZAPFRAUD, INC., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>FIREEYE, INC., )<br>)<br>Defendant. ) | Civil Action No. 19-1688-CFC |

**MEMORANDUM ORDER**

Pending before the Court in this patent infringement action is Defendant FireEye, Inc.'s ("Defendant" or "FireEye") motion seeking a transfer of venue to the United States District Court for the Northern District of California ("Northern District of California"), which was filed pursuant to 28 U.S.C. § 1404(a) (the "Motion"). (D.I. 15) Plaintiff ZapFraud, Inc. ("Plaintiff" or "ZapFraud") opposes the Motion. For the reasons set forth below, FireEye's Motion is DENIED.

**I.   BACKGROUND**

Below, the Court provides some factual background on the parties and their legal dispute. Additional relevant facts will be set out as necessary in Section II below.

**A.   The Parties**

Plaintiff is a Delaware corporation with its principal place of business in Portola Valley, California. (D.I. 29 at ¶ 4) Plaintiff is a "technology company founded by leading e[-]mail security researcher Dr. Bjorn Markus Jakobsson." (*Id.* at ¶ 1) Plaintiff owns the two patents-in-suit, United States Patent Nos. 10,277,628 (the "'628 patent") and 10,609,073 (the "'073 patent"). (*Id.* at ¶ 3) Both the '628 patent and the '073 patent are entitled "Detecting Phishing Attempts";

they both relate to methods for "detecting fraud or phishing attempts in email communications." (*Id.* at ¶¶ 14, 16, 34, 36)

FireEye is a Delaware corporation with its principal place of business in Milpitas, California. (*Id.* at ¶ 5) It is alleged to directly infringe (by making, using, selling, offering to sell and/or importing), to induce infringement of, and to contributorily infringe the patents-in-suit, through, *inter alia*, its e-mail security products and services, particularly FireEye Email Security solutions (the "accused product"). (*Id.* at ¶¶ 6, 21-25, 28, 29, 41-43, 46, 47)

B. **Procedural Background**

The instant case is one of five filed by Plaintiff in this District on September 10, 2019, in which it brought related claims of patent infringement. (D.I. 1) Three of those other four actions are still pending: *ZapFraud, Inc. v. Barracuda Networks, Inc.*, Civil Action No. 19-1687-CFC-CJB ("*Barracuda*"); *ZapFraud, Inc. v. Mimecast North America, Inc. et al.*, Civil Action No. 19-1690-CFC ("*Mimecast*"); and *ZapFraud, Inc. v. Proofpoint, Inc.*, Civil Action No. 19-1691-CFC ("*Proofpoint*"). The fifth, *ZapFraud, Inc. v. Fortinet, Inc.* Civil Action No. 19-1689-CFC ("*Fortinet*"), was dismissed by stipulation in December 2019. *Fortinet*, D.I. 13.

FireEye filed the Motion on December 3, 2019. (D.I. 15) On December 20, 2019, United States District Judge Colm F. Connolly referred the Motion to the Court, along with other

pending motions. (D.I. 20)[1] Briefing on the Motion was completed on January 21, 2020. (D.I. 26)[2]

## II. DISCUSSION

### A. Legal Standard

The Court incorporates by reference herein the legal standard for review of a transfer motion filed pursuant to 28 U.S.C. § 1404(a), which was set out in its Memorandum Order in the *Barracuda* case. (*Barracuda*, D.I. 44 at 3-4)

### B. Appropriateness of the Transferee Venue

The first step in the transfer analysis is to determine whether this action could have been brought in the proposed transferee venue. Here, there is no dispute that this action could have been properly brought in the Northern District of California. (D.I. 16 at 7-8; D.I. 22 at 5)

### C. Application of the *Jumara* Factors

#### 1. Private Interest Factors

##### a. Plaintiff's choice of forum

---

[1] Also pending before the Court in this action is FireEye's amended motion to dismiss for failure to state a claim, (D.I. 31), in which in which it joins the *Mimecast* Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and 35 U.S.C. § 101. In the other three pending actions, there are various motions also pending before the Court; among them are Defendant Barracuda Networks Inc.'s motion to transfer the case against it to the Northern District of California, *Barracuda*, D.I. 27, and Defendant Proofpoint, Inc.'s motion to transfer its case to the Northern District of California, *Proofpoint*, D.I. 19.

[2] When FireEye filed the instant Motion, Plaintiff's then-operative First Amended Complaint only asserted infringement of the '628 patent. (D.I. 9) While the Motion was pending, Plaintiff filed the operative Second Amended Complaint, in which it asserts infringement of the '628 patent and the '703 patent. (D.I. 29) No party has suggested that the filing of the Second Amended Complaint had any impact on the parties' arguments for or against transfer; thus, the Court understands those arguments to apply just as well to the '703 patent-related claims as they would to the '628 patent-related claims.

When analyzing the first *Jumara* private interest factor—the "plaintiff's forum preference as manifested in the original choice"—if the plaintiff articulates rational and legitimate reasons for filing in this District, this factor will weigh against transfer. *Pragmatus AV, LLC v. Yahoo! Inc.*, Civil Action No. 11-902-LPS-CJB, 2012 WL 4889438, at *4 (D. Del. Oct. 15, 2012) (citation omitted), *report and recommendation adopted by* 2013 WL 174499 (D. Del. Jan. 16, 2013); *see also Intellectual Ventures I LLC v. Altera Corp.*, 842 F. Supp. 2d 744, 753-54 (D. Del. 2012). However, if the plaintiff's choice is made for an improper reason—such as where it is arbitrary, irrational, or selected to impede the efficient and convenient progress of a case—this factor will likely weigh in favor of transfer. *Pragmatus*, 2012 WL 4889438, at *4.

Plaintiff states multiple reasons why it brought this case in the District of Delaware, including that both it and its adversary FireEye are incorporated in Delaware. (D.I. 22 at 7) It is rationale and legitimate for an entity to file suit in the state where it makes its corporate home, *see Tessera, Inc. v. Broadcom Corp.*, Civil Action No. 16-379-LPS[-]CJB, Civil Action No. 16-380-LPS-CJB, 2017 WL 1065865, at *4 (D. Del. Mar. 21, 2017) (citing cases), just as it is for the entity to sue its adversary in the state of the adversary's incorporation (i.e., where personal jurisdiction over the defendant and proper venue are assured), *see, e.g.*, *David & Lily Penn, Inc., v. TruckPro, LLC*, Civ. No. 18-1681-LPS, 2019 WL 4671158, at *2 (D. Del. Sept. 25, 2019); *TSMC Tech., Inc. v. Zond, LLC*, Civil Action No. 14-721-LPS-CJB, 2014 WL 7251188, at *15 (D. Del. Dec. 19, 2014) (citing cases), *report and recommendation adopted by* 2015 WL 328334 (D. Del. Jan. 26, 2015).[3]

---

[3] In its reply brief, FireEye cites to some caselaw suggesting that Plaintiff's choice of forum should be given "less deference[,]" than normal. (D.I. 26 at 2) However, both of the authorities that FireEye cited for this proposition—*Mekiki Co. v. Facebook Inc.*, Civil Action No. 09-745 (JAP), 2010 WL 2348740, at *3 (D. Del. June 7, 2010) and *Sandvik AB v. Rockmore International, Inc.*, No. 4:05CV575, 2005 WL 3159282, at *4 (M.D. Pa. Nov 28, 2005)—rely for

Because there are legitimate reasons for Plaintiff having filed suit in this Court, this factor weighs against transfer.

### b.  Defendant's forum preference

As for the second private interest factor—the defendant's forum preference—FireEye prefers to litigate in the Northern District of California.  (D.I. 16 at 9)  In analyzing this factor, the Court has similarly "tended to examine whether the defendant can articulate rational, legitimate reasons to support that preference."  *Pragmatus*, 2012 WL 4889438, at *6.  FireEye asserts that it wishes to litigate in the proposed transferee district, where it is headquartered and where a number of its employees work.  (D.I. 16 at 1, 2-3, 9)  That makes good sense too and so this factor thus supports transfer.[4]  *See, e.g.*, *Tessera, Inc.*, 2017 WL 1065865, at *5 (citing cases).

### c.  Whether the claims arose elsewhere

The third private interest *Jumara* factor asks "whether the claim arose elsewhere."  As a matter of law, patent infringement claims arise "wherever someone has committed acts of

---

support on the idea that a plaintiff's choice of forum is afforded less deference if the plaintiff is not physically located in Delaware (i.e., that Delaware is not its "home turf").  For reasons the Court has previously explained, whether Delaware is Plaintiff's "home turf" is not relevant here, as it has no independent significance as to this first *Jumara* private interest factor.  *Tessera, Inc.*, 2017 WL 1065865, at *4 n.6; *Pragmatus*, 2012 WL 4889438, at *5; *see also Applied Predictive Techs., Inc. v. MarketDial, Inc.*, Civil Action No. 18-963-CFC, 2019 WL 2745724, at *3 (D. Del. July 1, 2019).

[4]   Plaintiff suggests that in the analysis of these private interest factors, the movant's choice of forum is automatically entitled to less weight than that given to a plaintiff's choice of forum.  (D.I. 22 at 7-8)  The Court disagrees, as it has previously explained why it cannot find any support for that proposition in governing Third Circuit case law.  *See, e.g.*, *Elm 3DS Innovations LLC v. SK Hynix Inc.*, Civil Action No. 14-1432-LPS-CJB, 2015 WL 4967139, at *6 n.13 (D. Del. Aug. 20, 2015) (citing cases); *Pragmatus*, 2012 WL 4889438, at *7.

infringement, to wit, 'makes, uses, offers to sell, or sells any patented invention' without authority." *McRo, Inc. v. Activision Blizzard, Inc.*, Civil Action No. 12-1508-LPS-CJB, 2013 WL 6571618, at *5 (D. Del. Dec. 13, 2013) (certain internal quotation marks and citations omitted), *report and recommendation adopted by* 2013 WL 6869866 (D. Del. Dec. 30, 2013). Nevertheless, as to this factor, this Court typically focuses on the location of the production, design and manufacture of the accused instrumentalities. *Id.* (citing cases).

On this score, FireEye avers that the "*majority* of [its] operations relating to [the accused product], including research and development, testing, and marketing" occur at its headquarters in the Northern District of California (while additional such work occurs in Ireland and India). (D.I. 18 at ¶ 5 (emphasis added); *see also* D.I. 16 at 9; D.I. 26 at 4-5)  It further asserts that "[d]ecisions regarding sales and pricing of the accused products take place in Northern California." (D.I. 18 at ¶ 5)  FireEye's submitted declaration was vague or silent as to:  (1) where the accused product was/is actually commercially made/manufactured; or (2) where offers for sale of the accused product are made.  This lack of precision is especially concerning here, where 2,800 of FireEye's 3,400 employees work in locations other than the Northern District of California.  (D.I. 18 at ¶ 4)  And the accused product is sold throughout the United States (though an accused product has only been shipped once to a location in Delaware).  (*Id.* at ¶ 13; D.I. 23, ex. 2)

With more allegedly infringing acts likely having a larger connection to the proposed transferee district than to other districts, but with the real possibility that a good number of such acts occurred at various locations around the country (or world), the Court finds this factor to weigh slightly in favor of transfer.  *Cf. VSLI Tech. LLC v. Intel Corp.,* Civil Action No. 18-966-CFC, 2018 WL 5342650, at *6 (D. Del. Oct. 29, 2018) (concluding the same, where much of the

research and development efforts associated with the accused products took place in the proposed transferee district, but where some took place elsewhere, and where the accused products were marketed and sold throughout the United States).

### d. Convenience of the parties as indicated by their relative physical and financial condition

In assessing the next private interest factor—"the convenience of the parties as indicated by their relative physical and financial condition"—this Court has traditionally examined a number of issues, including: "(1) the parties' physical location; (2) the associated logistical and operational costs to the parties' employees in traveling to Delaware (as opposed to the proposed transferee district) for litigation purposes; and (3) the relative ability of each party to bear these costs in light of its size and financial wherewithal." *Audatex N. Am., Inc. v. Mitchell Int'l, Inc.*, C.A. No. 12-cv-139 (GMS), 2013 WL 3293611, at *4 (D. Del. June 28, 2013) (internal quotation marks and citations omitted).

FireEye argues that the Northern District of California would be more convenient for it. (D.I. 16 at 10-11)  And the Court agrees that it would, as its principal place of business is located there, and certain operations and employees relating to the accused product are located there. (D.I. 18 at ¶¶ 3, 5-6)

This inconvenience argument is mitigated, however, by three other considerations.  First, it is hard for FireEye to argue that this district is a decidedly inconvenient litigation forum, since it is incorporated here. *See, e.g.*, *Contour IP Holding, LLC v. GoPro, Inc.*, Civil Action No. 15-1108-LPS-CJB, 2017 WL 3189005, at *10 (D. Del. July 6, 2017) (citing cases).  Second, the amount of inconvenience that any of FireEye's employees might face via travel to Delaware is not likely to be large—particularly if this case does not result in a trial. *See, e.g.*, *id.*, *Human Genome Scis., Inc. v. Genentech, Inc.*, C.A. Nos. 11-082-LPS, 11-156-LPS, 11-328-LPS, 2011

WL 2911797, at *7 (D. Del. July 18, 2011).[5] Third, FireEye does not argue that it lacks the resources to litigate here; surely it does not, as it is an international corporation with thousands of employee in the United States and abroad. (D.I. 18 at ¶¶ 4-5)

As for Plaintiff, it too is located in the Northern District of California, and so is Dr. Jakobsson, its founder and the sole inventor of the patents-in-suit.[6] (D.I. 22 at 3, 14; D.I. 24 at ¶ 2; D.I. 29 at ¶¶ 1, 14, 34) In light of that, while Delaware (its corporate home) would be a convenient place to litigate, the proposed transferee district is certainly not *inconvenient*.

Ultimately, with some uncertain number of possible employee witnesses located in the proposed transferee district and none in Delaware, but with the parties having ample resources with which to litigate this case, the Court concludes that this factor should slightly favor transfer. *See Tessera, Inc.*, 2017 WL 1065865, at *7 (same).

        e.       **Convenience of the witnesses to the extent that they may actually be unavailable for trial in one of the fora**

The "convenience of the witnesses" is the next factor, "but only to the extent that the witnesses may actually be unavailable for trial in one of the fora." Of particular concern here are non-party fact witnesses, especially those who may not appear of their own volition in the venue-at-issue and who could not be compelled to appear there by subpoena pursuant to Federal Rule of

---

[5] FireEye makes no attempt to identify employee witnesses who have relevant information and who might actually be likely to testify at trial.

[6] FireEye suggests concern, as to this factor, about whether Dr. Jakobsson would testify at trial in Delaware. (D.I. 16 at 10-11) The Court understands Dr. Jakobsson to be a party witness, and thus that Plaintiff would be obligated to procure his attendance at trial. But to the extent that is incorrect, Dr. Jakobsson has attested that he will testify at trial here, if asked. (D.I. 24 at ¶ 2)

Civil Procedure 45. *ADE Corp. v. KLA-Tencor Corp.*, 138 F. Supp. 2d 565, 568-69 (D. Del. 2001); *Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 203 (D. Del. 1998).[7]

As to this factor, FireEye mentions two types of third-party witnesses who reside in the proposed transferee district: (1) three former FireEye employees (Henry Uyeno, whose title was Principal Software Engineer and who was "the main engineer in charge of building" the accused product, and Rizwan Merchant and Feijun Song, both of whom were "FireEye EX Developer[s]" and both of whom were "involved in building" the accused product); and (2) William Mabry Tyson, the author of an article which is asserted to be a prior art reference to (at least) the '628 patent. (D.I. 16 at 11-12; D.I. 17 at ¶ 6; D.I. 18 at ¶¶ 7-9; D.I. 26 at 7-8)

To its credit, FireEye did a good job in specifically identifying these third-party witnesses and the relevance of their possible testimony. As to the three former employees, FireEye explains that they would testify "regarding the functioning of relevant features of FireEye's email security products at particular times, which is relevant to infringement." (D.I. 16 at 12; *see also* D.I. 26 at 7) And in light of the nature of the asserted claims in this case, the Court thinks it understands why Mr. Tyson is said to possess information about relevant prior art. (D.I. 29 at ¶¶ 24, 42; *see also* D.I. 16 at 11-12). However, even assuming that it is likely that these individuals

---

[7] In *Jumara*, the Third Circuit made clear that in order for this factor to meaningfully favor the movant, the movant must come forward with some amount of specificity. This is evident from the wording of the factor itself, which notes that the witnesses' convenience should be considered "only to the extent that the witnesses may *actually be* unavailable for trial in one of the fora[.]" *Jumara*, 55 F.3d at 879 (emphasis added). And it is evident from the legal authority that the *Jumara* Court cited to in setting out this factor. *See Elm 3DS*, 2015 WL 4967139, at *8 (citing *Jumara*, 55 F.3d at 879). In light of this, in order for the movant to convincingly argue that this factor squarely favors transfer, the movant must provide specificity as to: (1) the particular witness to whom it is referring; (2) what that person's testimony might have to do with a trial in this case; and (3) what reason there is to think that the person will "actually be" unavailable for trial (as opposed to the proffer of a guess or speculation on that front). *See id*.

would be trial witnesses, FireEye fails to put forward any evidence demonstrating that they would "actually be unavailable" for trial in Delaware.[8]

Absent some evidence that these third-party witnesses will be unlikely to testify, the Court cannot give FireEye's argument as to their potential unavailability great weight. But with some number of possible third-party witnesses located in the proposed transferee district and none in Delaware, the Court finds that this factor should at least weigh slightly in favor of transfer. *See Tessera, Inc.*, 2017 WL 1065865, at *9; *Papst Licensing GmbH & Co. KG v. Lattice Semiconductor Corp.*, 126 F. Supp. 3d 430, 443 (D. Del. 2015).

### f. Location of relevant evidence

Next, the Court considers "the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) (internal quotation marks and citation omitted). Yet this factor is commonly given little weight, as technological advances have "shortened the time it takes to transfer information, reduced the bulk or size of documents or things on which information is recorded . . . and have lowered the cost of moving that information from one place to another." *Cypress Semiconductor Corp. v. Integrated Circuit Sys., Inc.*, No. 01-199-SLR, 2001 WL 1617186, at *3 (D. Del. Nov. 28, 2001) (internal quotation marks and citation omitted).

---

[8] Indeed, as to the former employees, FireEye asserts in its opening brief that they "*would testify* at trial regarding" certain features of the accused products. (D.I. 16 at 12 (emphasis added))

10

It is likely true that the bulk of the relevant records in this case will be in the possession of the accused infringer, and FireEye asserts that most or all of those relevant records are located in the proposed transferee district. (D.I. 16 at 13; D.I. 26 at 8) That said, there is no indication that any such records could not be easily produced for trial in Delaware. (D.I. 22 at 16) This factor thus should only slightly favor transfer, and should not have a significant impact in the overall calculus. *Genedics, LLC v. Meta Co.*, Civil Action No. 17-1062-CJB, 2018 WL 417950, at *8 (D. Del. Jan. 12, 2018).

### 2. Public Interest Factors

The Court below addresses the public interest factors that are in dispute here.

#### a. Practical considerations that could make the trial easy, expeditious, or inexpensive

The Court first considers the "practical considerations" factor. As this is a "public interest" factor, it requires that "at least some attention [must] be paid to the *public* costs of litigation[.]" *Schubert v. Cree, Inc.*, Civil Action No. 12-922-GMS, 2013 WL 550192, at *5 (D. Del. Feb. 14, 2013) (emphasis in original).

The parties focus their arguments on the fact that Plaintiff filed four other cases in this District, all of which involve the same patents and three of which are still pending. (*See* D.I. 22 at 17-18; *see also* D.I. 16 at 14-15; D.I. 26 at 9-10)[9] Of the four remaining cases, the Defendants in three have filed transfer motions; one case, the *Mimecast* case, will remain in this district no matter what happens with the transfer motions. Judicial economy does counsel in favor of

---

[9] The Court rejects FireEye's argument that witnesses located in the proposed transferee forum tip this factor in favor of transfer. (D.I. 16 at 13-14; D.I. 26 at 10) These facts have already been taken into account as relevant to other private interest *Jumara* factors, and the Court will not "double count" them here with respect to this public interest factor. *See Elm 3DS*, 2015 WL 4967139, at *11.

having one judge in one district oversee all related cases involving the same patent. *See Papst Licensing*, 126 F. Supp. 3d at 444; *Elm 3DS Innovations LLC v. SK Hynix Inc.*, Civil Action No. 14-1432-LPS-CJB, 2015 WL 4967139, at *10-11 (D. Del. Aug. 20, 2015). And at the time the Motion was filed, it could have reasonably been anticipated that some of these other related cases would continue on in this Court for some time (as they have here) and require the Court to expend resources on them. In light of this, the Court finds this factor to weigh against transfer. *See Elm 3DS*, 2015 WL 4967139, at *10-11.

### b. Local interests in deciding local controversies at home

In patent litigation, the local interest factor is typically neutral, as patent issues tend to raise controversies that are more properly viewed as national, not local, in scope. *Graphics Props. Holdings Inc. v. Asus Comput. Int'l, Inc.*, 964 F. Supp. 2d 320, 330 (D. Del. 2013). Nevertheless, if there is a showing that the case has outsized resonance to the citizens of one of the districts, that could cause this factor to meaningfully favor one of the parties. *See Genedics*, 2018 WL 417950, at *9 & n.7 (citing cases).

Here, FireEye argues that because "both parties and the majority of the activity that gave rise to the claim and that would be affected by a judgment are in the Northern District of California[,]" (D.I. 16 at 16), this factor should redound in its favor. Plaintiff rightly counters that Delaware also has an interest in adjudicating disputes between two companies incorporated here. *See Ultravision Techs., LLC v. RMG Networks Holding Corp.*, Civil Action No. 18-1333-CFC, 2019 WL 1985110, at *3 (D. Del. May 6, 2019) (*cited in* D.I. 22 at 19).

With both sides having something to say, but with neither side demonstrating that this case will significantly affect the public at large in either district, this factor is neutral. *See David & Lily Penn, Inc.*, 2019 WL 4671158, at *5.

### c. Public policies of the fora

As for the "public policies of the fora," our Court has noted that "the public policy of Delaware encourages the use by Delaware corporations of Delaware as a forum for resolution of business disputes." *Good Tech. Corp. v. MobileIron, Inc.*, Civil Action No. 14-1308-LPS-CJB 2015 WL 1458091, at *10 (D. Del. March 27, 2015) (internal quotation marks and citation omitted). Even FireEye acknowledges that this factor weighs against transfer to some extent, (D.I. 16 at 16), and the Court agrees that it does weigh against transfer, *see Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*, Civil Action No. 15-1168-LPS-CJB, 2016 WL 8677211, at *12 (D. Del. Sept. 23, 2016).

### 3. Conclusion Regarding Impact of *Jumara* Factors

In sum, Plaintiff's "forum preference as manifested in the original choice," the "practical considerations" factor and the public policies of Delaware factor weigh squarely against transfer. On the other hand, FireEye's forum preference squarely favors transfer, while the "whether the claim arose elsewhere" factor, the convenience of the parties factor, the convenience of the witnesses factor and the location of evidence factor weigh only slightly in favor of transfer. The other factors are neutral.

In the end, there are reasons why both districts would be understandable locations for this suit (one being where both sides are incorporated, the other where both sides have their principal places of business). And there are other reasons why the case should either remain here or, alternatively, be transferred. With the *Jumara* factors not "strongly" favoring transfer, the Court concludes that the Motion should be denied.

### III. CONCLUSION

For the reasons set out above, the Court orders that Defendant's Motion be DENIED.[10]

Dated: July 28, 2020

*Christopher J. Burke*
Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE

---

[10] The Court also DENIES Plaintiff's request for oral argument.  (D.I. 36)